UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GABRIEL ECKARD,

                Plaintiff,

    v.

DEREK WALTERS, *et al.*,

                Defendants.

CASE NO. C19-242-RAJ-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Gabriel Eckard, who is currently confined at the Snohomish County Jail, is proceeding with this action *pro se* and *in forma pauperis*. The claims asserted in this action arise out of Plaintiff's confinement at the Monroe Correctional Complex ("MCC") – Special Offender Unit ("SOU") in April 2018. (*See* Dkt. # 6.) Plaintiff alleges that Defendants violated his Fourth Amendment rights when they ordered him to submit to a strip search with no penological justification. (*Id*. at 5.) He further alleges that Defendants violated his Eighth Amendment rights when they left him in a visiting cell for more than eight hours without access to a toilet or urine receptacle, forcing him to urinate on the floor and to then cohabitate with his puddle of urine. (*Id*.) Plaintiff identifies MCC

employees Derek Walters, Breeann Caraway, and Myron Ayala as defendants in this action. (*See id.* at 2.) He seeks declaratory relief and damages. (*Id.* at 6.)

Defendants have filed a motion to dismiss Plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. # 13.) Plaintiff has filed a response opposing Defendants' motion, and Defendants have filed a reply brief in support of their motion. (Dkt. ## 15, 16.) The Court, having reviewed the submissions of the parties, concludes that Defendants' motion to dismiss should be granted and that Plaintiff's complaint should be dismissed without prejudice.

## II.   FACTS

On April 1, 2018, at approximately 3:15 p.m., Correctional Sergeant Breeann Caraway had Plaintiff removed from his cell in the SOU for purposes of conducting a cell search. (Dkt. # 6, ¶¶ 8, 9.) Plaintiff was placed in a visiting cell which was located down the corridor from his assigned cell. (*Id.*, ¶ 10.) Correctional Sergeant Myron Ayala then directed Plaintiff to submit to a strip search. (*Id.*) When Plaintiff asked Sergeant Ayala what he was being searched for, Sergeant Ayala responded that Plaintiff was being searched for personal property. (*Id.*) While Plaintiff was confined in the visiting cell, Sergeant Caraway and another correctional officer searched Plaintiff's cell and removed some property (*Id.*, ¶ 11.) Following the search of Plaintiff's cell, Sergeant Caraway went to the visiting cell and ordered Plaintiff to comply with the strip search procedure. (*Id.*) Plaintiff refused to comply with the directive, believing Defendants had no reasonable suspicion that he was concealing contraband. (*Id.*, ¶ 12.)

After Plaintiff refused multiple directives to comply with the strip search procedure, Correctional Lieutenant Derek Walters ordered that Plaintiff not be removed from the visiting cell until he complied. (*Id.*, ¶ 14.) At approximately 9:30 p.m., Sergeant Ayala advised Plaintiff

REPORT AND RECOMMENDATION
PAGE - 2

that he would remain in the visiting cell all night unless he complied with the strip search procedure. (*Id.*, ¶ 15.) Sergeant Ayala further advised Plaintiff that he would inform his relief, Correctional Sergeant Brian Wilmoth, of this directive. (*Id.*)

At approximately 10:30 p.m., Plaintiff urinated on the floor of the visiting cell because the cell did not have a toilet and Plaintiff was never offered the use of a portable urine receptacle. (*Id.*, ¶ 16.) After a correctional officer noticed that urine had streamed out from under the door of the visiting cell and into the corridor, she reported it to Sergeant Wilmoth who, in turn, reported it to Correctional Lieutenant Jim Fletcher. (*Id.*) At approximately 11:00 p.m., Lieutenant Fletcher came and asked Plaintiff if he would be willing to return to his assigned cell, and Plaintiff agreed. (*Id.*) At approximately 11:30 p.m., Lieutenant Fletcher and another correctional officer returned Plaintiff to his assigned cell. (*Id.*) Plaintiff was never strip searched. (*Id.*)

### III.   DISCUSSION

#### A.   Motion to Dismiss Standard

A defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The Court also liberally construes a *pro se* pleading. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). However, the Court "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

B.  **Section 1983 Standard**

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of by the plaintiff. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

C.  **Fourth Amendment**

Plaintiff alleges that Defendants Ayala and Caraway both ordered him to comply with the strip search procedure, and that Defendant Walters ordered that he not be removed from the visiting cell until he complied with the strip search procedure. (Dkt. # 6, ¶¶ 10, 11, 13.) Plaintiff states that he was told he was being searched for "personal property," and that he refused to comply with Defendants' orders because, in his opinion, Defendants had no reasonable suspicion that he was concealing contraband. (*Id.*, ¶¶ 10, 12.) Though Plaintiff was never actually searched, he maintains that the orders to submit to a strip search violated his rights under the

REPORT AND RECOMMENDATION
PAGE - 4

Fourth Amendment. (*Id.*, ¶ 22.)

The Fourth Amendment guarantees the right of people to be secure against unreasonable searches, and its protections extend to incarcerated prisoners. *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988). The reasonableness of a particular search is determined by reference to the prison context, and "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Strip searches generally do not violate the Fourth Amendment rights of prisoners. *See id.*, at 332-33. However, strip searches that are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest" may be unconstitutional. *Id.* at 332.

While Plaintiff claims that Defendants' orders that he submit to a strip search violated his Fourth Amendment rights, all he offers in support of this claim is his conclusory assertion that the orders were unreasonable and without penological need. Plaintiff's opinion regarding the need for the search is insufficient to establish that Defendants ordered the search for an improper purpose. Likewise, the fact that a corrections lieutenant on a subsequent shift determined that Plaintiff was to be returned to his cell without being searched does not render the actions of Defendants unreasonable or improper.[1] Plaintiff has not alleged sufficient facts to state a plausible Fourth Amendment claim, and Defendants' motion to dismiss that claim should therefore be granted.

---

[1] Plaintiff, in his response to Defendants' motion to dismiss, notes that he asserted the same claims, based on the same facts, in a prior action, and the Court in that instance deemed the claims viable. (*See* Dkt. # 15 at 1-3, citing *Eckard v. Walters*, C18-1258-RSM-JPD.) Plaintiff directs this Court's attention to an Order issued in his prior case in which the Honorable James P. Donohue, retired United States Magistrate Judge, concluded that Plaintiff's claim that Defendants Walters, Caraway, and Ayala acted without penological justification in ordering Plaintiff to submit to a strip search was "supported by the allegation that ultimately he was returned to his cell without being searched." (*Id.* at 2.) This Court respectfully disagrees with that conclusion and notes in particular an exhibit submitted by Plaintiff in support of his original complaint in his prior case which explains in some detail the penological justification for Defendants having ordered the strip search in the first instance. *See* C18-1258-RSM-JPD, Dkt. # 4-2 at 3.

REPORT AND RECOMMENDATION
PAGE - 5

### D. Eighth Amendment

Plaintiff alleges that defendants Walters and Ayala advised him he would remain in the visiting cell unless and until he complied with the strip search procedure. (Dkt. # 6, ¶¶ 14, 15.) Plaintiff claims that after being housed in the cell for just over seven hours, he was "forced" to urinate on the floor because of the absence of a toilet in the cell and because he was never offered the use of a portable urine receptacle. (*Id.*, ¶ 16.) Plaintiff was returned to his assigned cell approximately an hour after urinating on the floor of the visiting cell. (*See id.*, ¶¶ 16, 19.) Plaintiff asserts that Defendants violated his Eighth Amendment rights when they left him in the visiting cell for more than eight hours without access to a toilet or urine receptacle, and when they attempted to leave him to "cohabitate with a puddle of urine." (*Id.*, ¶ 23.)

The treatment a prisoner receives in prison, and the conditions under which he is confined, are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement. *Id*. This duty includes ensuring that inmates receive adequate food, clothing, shelter, sanitation, and medical care, and taking reasonable measures to guarantee the safety of inmates. *Id*.

In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component. The Eighth Amendment standard requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind. *Id*. at 834. The objective component of an Eighth Amendment claim is "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "[O]nly those deprivations denying 'the

minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837. The Supreme Court has made clear that it is obduracy and wantonness, not inadvertence or error in good faith that characterize the conduct prohibited by the cruel and unusual punishment clause. *Whitley v. Albers*, 475 U.S. 312 (1986).

The circumstances, nature, and duration of an alleged deprivation are relevant to the question of whether a constitutional violation has occurred. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Subjecting a prisoner to a lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment. *Anderson v. County of Kern*, 45 F.3d 1310, 1314, *as amended*, 75 F.3d 448 (9th Cir. 1995).

Plaintiff has not alleged sufficient facts to state a plausible Eighth Amendment claim. The temporary placement of plaintiff in a cell lacking a toilet while waiting for Plaintiff to comply with the directives of corrections staff was not "sufficiently grave" to implicate Eighth Amendment concerns. *See May v. Baldwin*, 109 F.3d 557, 566 (9th Cir. 1997) ("confining an inmate to his cell for less that 24 hours in order to encourage compliance with prison security regulations does not rise to the level of deliberate indifference"). Moreover, though Plaintiff claims he was left in a cell without a toilet for over eight hours and was not provided a urine

REPORT AND RECOMMENDATION
PAGE - 7

receptacle, he does not allege that he asked Defendants, or any other member of the corrections staff, to be provided access to a toilet or urine receptacle and was denied such access. Plaintiff's claim that he was forced to "cohabitate" with his urine for a period of approximately one hour likewise does not implicate Eighth Amendment concerns as the alleged deprivation of sanitary conditions was neither severe nor prolonged. Defendants' motion to dismiss Plaintiff's Eighth Amendment claims should be granted as well.

### IV.  CONCLUSION

Based on the foregoing, this Court recommends that Defendants' motion to dismiss be granted, and that Plaintiff's complaint be dismissed without prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **twenty-one (21)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed three pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on the date that objections were due.

DATED this 3rd day of July, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge